IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| G.W. VAN KEPPEL COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 20-4040-JWL |
| | ) |
| MARTIN MARIETTA MATERIALS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## **MEMORANDUM AND ORDER**

In this case, plaintiff G.W. Van Keppel Company ("Van Keppel") asserts a claim against defendant Martin Marietta Materials, Inc. ("MMM") for breach of a provision in equipment rental agreements between the parties that would require an indemnity payment to Van Keppel. MMM asserts a counterclaim against Van Keppel for breach of a different provision in a purchase order that would require Van Keppel's indemnification of MMM. This matter presently comes before the Court on Van Keppel's motion for summary judgment on its affirmative claim (Doc. # 14) and MMM's motion for summary judgment on its counterclaim (Doc. # 29).[1] For the reasons set forth below, the Court **denies** both motions.

---

[1] Neither party has moved for summary judgment on the other party's claim.

I.     **Background**

In November 2014, Van Keppel purchased a mobile, track-mounted rock crusher. Van Keppel rented the equipment to MMM, a long-time regular rental customer of Van Keppel, pursuant to Equipment Rental Agreements dated November 3, 2014, and March 19, 2015. The equipment was delivered directly from the manufacturer to MMM's site in Missouri, and MMM subsequently moved the equipment to its site in DeSoto, Kansas. By email dated March 24, 2015, Van Keppel made the following request to MMM: "Please issue PO #s for the attached rental agreements and we will invoice." MMM then sent Van Keppel a purchase order, dated March 31, 2015, for equipment rental, and Van Keppel proceeded to send an invoice to MMM that referenced the purchase order by number. Finally, on July 1, 2015, the parties executed a Master Access Agreement ("the MAA") relating to Van Keppel's access to MMM's premises.

This case arises from an accident that occurred at MMM's DeSoto site on June 25, 2015, while the equipment was in the process of being moved from the site to Van Keppel's property. MMM had last used the equipment on June 8, and on June 23 Van Keppel's employees assisted MMM's employees in preparing the equipment for transport to Van Keppel. Van Keppel contracted with Lyon and Lyon to transport the equipment, and on June 25 Ryan Newham, Lyon and Lyon's employee, operated a remote control to load the equipment onto the transport truck without the assistance of MMM's employees. After the equipment had been loaded onto the truck, Mr. Newham climbed onto the equipment, fell, and suffered injuries. In May 2016, Mr. Newham and his spouse sued Van Keppel and

MMM in the Circuit Court of Cass County, Missouri, to recover damages resulting from the accident.

In the present action, Van Keppel asserts a claim of breach of contract, based on its claim that MMM was required to defend and indemnify it in the *Newham* suit pursuant to indemnification provisions in the rental agreements, and Van Keppel seeks as damages the amount it paid to settle the suit and for its fees and expenses incurred therein. By counterclaim, MMM seeks similar damages, based on its claim that Van Keppel was required to defend and indemnify it in the *Newham* suit pursuant to an indemnification provision in the purchase order. Each party now seeks summary judgment on its own affirmative claim.

## II. <u>Van Keppel's Motion for Summary Judgment</u>

Van Keppel seeks to recover pursuant to the indemnification provisions in the rental agreements, which require MMM to defend and indemnify Van Keppel from any loss in connection with injury "arising from or in connection with the use or operation of the equipment from the time of delivery of equipment until the return to G.W. Van Keppel." Van Keppel now seeks summary judgment on that claim. The Court grants summary judgment in favor of a movant if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

The Court first rejects MMM's argument that Van Keppel cannot enforce the indemnification provision because Van Keppel did not sign the rental agreements. MMM

has not cited any authority in support of that argument, and MMM has not explained why Van Keppel was required to sign those agreements. *See Hartford Fire Ins. Co. v. P&H Cattle Co., Inc.*, 451 F. Supp. 2d 1262, 1273-74 (D. Kan. 2006) (citing *Fey v. Loose-Wiles Biscuit Co.*, 147 Kan. 31 (1938)) (no requirement under Kansas law that indemnity agreement be signed, acceptance may be shown by assent to the agreement's terms), *aff'd*, 248 F. App'x 942 (10th Cir. 2007).[2]  The fact that Van Keppel did not sign agreements for which no signature was required does not provide evidence that either party failed to accept the written agreements.  Indeed, MMM does not dispute that the parties acted on those agreements.  Accordingly, the lack of a signature by Van Keppel does not preclude summary judgment.

MMM next argues that the accident does not fall within the scope of the rental agreements' indemnification provision because it did not occur during "use or operation" of the equipment.  It is undisputed that the accident did not occur while MMM was using the equipment in its business, but instead occurred after the equipment had already been loaded onto the truck for transport to Van Keppel at the conclusion of the lease.  Thus, under the ordinary meaning of the words, the equipment was not being "used" or "operated" because it was not being manipulated or powered for its usual purpose or any purpose for anyone's benefit, but was merely sitting in place while someone climbed on it for purposes relating to its transport not under its own power.

---

[2] The parties agree in their briefs and have stipulated in the pretrial order that their claims are governing by the substantive law of Kansas.

4

In reply, Van Keppel argues that the equipment was being "operated" pursuant the holding of *Midwest Concrete Placement, Inc. v. L&S Basements, Inc.*, 2009 WL 1162391 (D. Kan. Apr. 29, 2009), *aff'd*, 363 F. App'x 570 (10th Cir. 2010), but the Court disagrees. In that case, the indemnification provision required an incident relating to the "operation or handling" of equipment on the defendant's job site, and the court rejected the defendant's argument that because the plaintiff's negligent failure to maintain the equipment took place before the equipment reached the job site, it did not fall within the scope of the provision. *See id.* at *8. In that case, however, the injury took place while the equipment was being "operated" for its normal purpose, and the court thus held that the incident did fall within the scope of the provision. *See id.* The court did not hold that such a provision applies whenever injury is caused by a failure to maintain the equipment; indeed, such an interpretation would effectively nullify the "use or operation" limitation in the indemnification provision at issue here. Thus Van Keppel has failed to identify any authority to suggest that its loss for which it seeks indemnification arose in connection with the "use or operation" of the equipment as a matter of law. Summary judgment in favor of Van Keppel is therefore precluded on this basis.[3]

The Court also agrees with MMM that summary judgment is precluded because the Court cannot conclude as a matter of law that the accident occurred prior to the equipment's

---

[3] To be clear, the Court has not definitively interpreted this term; rather, it merely holds that it cannot conclude as a matter of law that the accident falls within the scope of the provision. MMM has not moved for summary judgment on Van Keppel's claim; thus, the Court need not decide at this stage whether the accident does *not* fall within the scope of the provision as a matter of law.

5

return to Van Keppel, as required by the indemnification provision. It is undisputed that the accident occurred after Van Keppel's contractor had loaded the equipment onto the contractor's truck; thus, Van Keppel had already asserted control over the equipment, with no intent to relinquish that control again to MMM. In light of that fact, the Court rejects plaintiff's argument that the equipment had not yet been returned as a matter of law.

Van Keppel argues that the entirety of the rental agreements should be considered to interpret the indemnification provision as applying until the equipment was delivered to and arrived at Van Keppel's property in Kansas City, Kansas. Van Keppel notes that one provision of the agreements requires MMM to "deliver and return" the equipment to Van Keppel at MMM's expense, while another provision states that "Van Keppel is responsible to the return freight back to VK shop" at an address in Kansas City. The agreements' return and indemnification provisions, however, refer to return and delivery to *Van Keppel*, not to Van Keppel's property or any particular address; the address is only referenced with respect to Van Keppel's obligation to pay freight to that location. Under the ordinary meaning of the term, it would appear that the equipment was returned to Van Keppel when Van Keppel (through its contractor) took control of the equipment from MMM and loaded it onto the contractor's truck.[4] The Court therefore cannot conclude as a matter of law that the accident occurred prior to return of the equipment to Van Keppel as required for

---

[4] Again, the Court merely concludes that Van Keppel does not prevail as a matter of law on this issue; it does not address whether MMM prevails as a matter of law.

application of the indemnification provision, and Van Keppel's motion for summary judgment is denied for this reason as well.[5]

### III. MMM's Motion for Summary Judgment

In its counterclaim, MMM seeks to recover its own expenses incurred in the *Newham* litigation. In support of its motion for summary judgment on that claim, MMM argues that Van Keppel is subject to the indemnification provisions in the purchase order and the MAA as a matter of law.

The Court first addresses MMM's claim under the MAA. As Van Keppel notes, in pleading the counterclaim, MMM based the claim for indemnification only on the purchase order, without any mention of the MAA. In its reply brief, MMM argues that because the pretrial order (which supersedes the pleadings) has now been issued, and because the pretrial order includes MMM's contention that the MAA provides for indemnification from Van Keppel, a counterclaim based on the MAA should be permitted, particularly because the MAA was produced in discovery and Van Keppel has not demonstrated the requisite prejudice. MMM has not been entirely candid with the Court, however, as it failed to note or address the fact that in the pretrial order the Magistrate Judge expressly stated that it had denied MMM's request to amend its counterclaim to include a claim based on the MAA. MMM did not timely appeal that ruling by the Magistrate Judge to this Court. *See* D. Kan.

---

[5] In light of its conclusions concerning whether the loss falls within the scope of the rental agreements' indemnification provisions, the Court need not consider MMM's additional arguments that Van Keppel cannot recover under those provisions because they were modified or superseded by the purchase order and the MAA.

7

Rule 72.1.4 (magistrate judge's orders must be appealed pursuant to Fed. R. Civ. P. 72); Fed. R. Civ. P. 72 (imposing 14-day deadline for review of orders and recommendations of magistrate judges). Thus, at present MMM's counterclaim is based solely on the purchase order.

MMM claims that Van Keppel must pay pursuant to the purchase order, which includes an indemnification provision in favor of MMM for any liabilities or expenses "arising out of or relating in any way from any defect in the goods or services purchased hereunder, or from any act or omission of [Van Keppel], its agents, employees, or subcontractors."

In opposition to summary judgment, Van Keppel does not argue that MMM's expenses incurred in the *Newham* litigation would not fall within the scope of this provision. Instead, Van Keppel first argues that because it did not sign the purchase order, the purchase order's provisions are not enforceable against it. Van Keppel makes this argument despite its position in support of its own motion – with which the Court has agreed – that no signatures are required under Kansas law for such an agreement. In making this argument, Van Keppel cites a provision of Kansas's enactment of the Uniform Commercial Code (UCC), Kan. Stat. Ann. § 84-2-209, but it has not shown (or offered any argument) that Article 2 of the UCC applies to its lease of equipment to MMM. *See id.* § 84-2-106(1) (in Article 2, "contract" or "agreement" refers to a contract for the sale of goods). Accordingly, the Court rejects the lack of a signature as a basis to invalidate the purchase order.

Van Keppel also argues that it did not accept the new terms, including the indemnification provision, included in the purchase order, and the Court agrees that the issue at least presents a question of fact for trial.  MMM relies on the fact that Van Keppel referred to the purchase order's identification number in the invoice to MMM.  The Court does not agree, however, that that reference is enough to compel the conclusion that Van Keppel assented to the new terms as a matter of law – particularly in light of the fact that Van Keppel's email requested a purchase order "for" the particular rental agreements, which provides evidence that Van Keppel did not intend the resulting purchase order to replace or modify the terms of those agreements.  MMM argues that the purchase order modified or superseded the rental agreements, and that a later agreement must prevail over an earlier agreement in the case of conflicting terms, but Van Keppel's assent would be required in any case.  MMM also notes that the purchase order provides for acceptance of that agreement by delivery of the goods, but Van Keppel cannot have accepted pursuant to that provision because the equipment had already been delivered by the time of the purchase order's issuance.  Moreover, the mere fact that the parties continued to perform under the existing agreements does not evidence any intent by Van Keppel to accept new terms proposed by MMM.  *See Wachter Mgmt. Co. v. Dexter & Chaney, Inc.*, 282 Kan. 365, 371 (2006).

The parties have not submitted any other evidence concerning the parties' treatment of or intent concerning the purchase order, either on that occasion or with respect to other transactions involving these parties that regularly did business with each other.  Accordingly, a question of fact remains for trial concerning whether the purchase order

9

constitutes an agreement between the parties, and the Court therefore denies MMM's motion for summary judgment on its counterclaim.[6]

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for summary judgment on its affirmative claim (Doc. # 14) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's motion for summary judgment on its counterclaim (Doc. # 29) is hereby **denied**.

IT IS SO ORDERED.

Dated this 15th day of June, 2021, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge

---

[6] In light of this ruling, the Court need not decide at this stage whether, assuming the purchase order constitutes an agreement between the parties, the purchase order modified or nullified the rental agreements' indemnification provisions. The Court notes that the parties have not addressed in their briefs the possibility that the indemnification provisions in the rental agreements and the purchase order – which are not identical in scope – are both valid and thus could apply simultaneously.