IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| G.W. VAN KEPPEL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-4040-JWL |
| | ) | |
| MARTIN MARIETTA MATERIALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER
## AND
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In this case, plaintiff G.W. Van Keppel Company ("Van Keppel") and defendant Martin Marietta Materials, Inc. ("MMM") have asserted claims against each other for breach of different indemnity provisions. The parties tried the case to the Court on December 13 and 14, 2021, at which trial the parties presented evidence and the Court heard argument. The parties also submitted proposed findings and conclusions prior to trial. This Memorandum and Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). Based on the evidence and arguments presented, and as more fully set forth below, the Court finds that neither party should prevail on its affirmative claim, and each party is therefore awarded judgment on the other party's claim.

## I.     **Background**

The following facts are undisputed.  In November 2014, Van Keppel purchased a mobile, track-mounted rock crusher.  Van Keppel rented the equipment to MMM, a long-time regular rental customer of Van Keppel, pursuant to Equipment Rental Agreements dated November 3, 2014, and March 19, 2015 ("the ERAs").  The equipment was delivered directly from the manufacturer to MMM's site in Missouri, and MMM subsequently moved the equipment to its site in DeSoto, Kansas.

By email dated March 24, 2015, Van Keppel made the following request to MMM: "Please issue PO #s for the attached rental agreements and we will invoice."  MMM then sent Van Keppel a purchase order, dated March 31, 2015, for the rental of this piece of equipment ("the Purchase Order"), and Van Keppel proceeded to send an invoice to MMM that referenced the Purchase Order by number.  Finally, on July 1, 2015, the parties executed a Master Access Agreement ("the MAA") relating to Van Keppel's access to MMM's premises.

This case arises from an accident that occurred at MMM's DeSoto site on June 25, 2015, while the equipment was in the process of being moved from the site to Van Keppel's property.  MMM had last used the equipment on June 8.  Van Keppel contracted with another company, Lyon and Lyon, to transport the equipment, and on June 25 Ryan Newham, Lyon and Lyon's employee, operated a remote control to load the equipment onto the transport truck without the assistance of MMM's employees.  After the equipment had been loaded onto the truck, Mr. Newham climbed onto the equipment, and he suffered injuries when he fell while climbing a ladder and grabbing a handrail, which gave way.  In

2

May 2016, Mr. Newham and his spouse sued Van Keppel and MMM in the Circuit Court of Cass County, Missouri, to recover damages resulting from the accident.

In the present action, Van Keppel asserts a claim of breach of contract, based on its contention that MMM was required to defend and indemnify it in the *Newham* suit pursuant to indemnity provisions in the ERAs, and Van Keppel seeks as damages the amounts it paid to settle the suit and for its fees and expenses incurred therein. By counterclaim, MMM seeks similar damages, based on its claim that Van Keppel was required to defend and indemnify it in the *Newham* suit pursuant to an indemnity provision in the Purchase Order.

## II.    Standards for Interpretation of the Indemnity Provisions

"The rules governing the interpretations and construction of indemnity contracts are no different than those relating to other types of contracts." *See Hartford Fire Ins. Co. v. P&H Cattle Co., Inc.*, 451 F. Supp. 2d 1262, 1276 (D. Kan. 2006) (citing *Chetopa State Bancshares, Inc. v. Fox*, 6 Kan. App. 2d 326, 331 (1981)), *aff'd*, 248 F. App'x 942 (10th Cir. 2007).[1] The Tenth Circuit has summarized Kansas law concerning the interpretation of contracts as follows:

> Under Kansas law, the primary rule in interpreting written contracts is to ascertain the intent of the parties. Furthermore, unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced. The intent of the parties is determined from the four corners of an unambiguous instrument, harmonizing the language therein if possible. Ambiguity does not appear

---

[1] The parties have stipulated that Kansas law governs this case, and the Court has applied Kansas law throughout the case in accord with that stipulation.

> unless it is genuinely uncertain which of two or more meanings is the proper meaning. A contract is ambiguous if it contains provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Courts should not strain to create an ambiguity where, in common sense, there is none. Finally, a court should consider extrinsic or parol evidence only after it has concluded that the plain language of the contract is ambiguous.

*See Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1186-87 (10th Cir. 2018) (footnote and internal quotations and citations omitted). In addition, specifically with respect to contracts of indemnity, the Tenth Circuit has noted that "[u]nder Kansas law, agreements in which one party agrees to indemnify another for the indemnitee's own negligence are disfavored and as such must be expressed in clear and unequivocal language." *See Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1062 (10th Cir. 1998) (citing *Zenda Grain & Supply Co. v. Farmland Indus., Inc.*, 20 Kan. App. 2d 728, 733 (1995)).

### III.   Van Keppel's Claim for Breach of the ERAs' Indemnity Provision

#### A.   *Scope of the Indemnity Provision*

Van Keppel claims that MMM has breached an indemnity provision in the ERAs by refusing to indemnify Van Keppel for expenses incurred in defending and settling claims asserted in the *Newham* case. The indemnity provision states as follows:

> Customer [MMM] assumes full responsibility for and agrees to indemnify G.W. Van Keppel against, and will protect and save G.W. Van Keppel harmless from any loss, liability, damage and expense in connection with injury to persons, including employees of Customer, or [property] arising from or in connection with the use or operation of the equipment from the time of delivery of equipment until the return to G.W. Van Keppel, and Customer will at its own expense defend G.W. Van Keppel against any claims and suits relating to any alleged loss, liability, damage, or expense,

4

including claims and suits wherein G.W. Van Keppel is claimed to have been
negligent or breached warranties in connection with this Agreement.

MMM argues that Van Keppel has failed to meet its burden of proof on this claim because
it has failed to show that the injury to Mr. Newham arose from or was connected with the
use or operation of the equipment prior to the return of the equipment to Van Keppel.  The
Court agrees with MMM, and it therefore finds for MMM on this claim.

First, Van Keppel has not shown an injury arising from or in connection with the
"use or operation" of the machine.  Van Keppel seeks to recover its expenses incurred in
the *Newham* suit, and it is undisputed that the injury at issue in that case was suffered by
Mr. Newham when he fell from the rock crushing machine after he had loaded it onto a
trailer for transport.  It is further undisputed that Van Keppel, the owner of the machine,
had engaged and contracted with Mr. Newham's employer to transport the machine from
MMM's facility at the conclusion of the lease.  The machine was not being used for some
purpose related to MMM's business at the time of the accident.  Thus, as the Court stated
in its summary judgment order,

> the equipment was not being "used" or "operated" because it was not being
> manipulated or powered for its usual purpose or any purpose for anyone's
> benefit, but was merely sitting in place while someone climbed on it for
> purposes relating to its transport not under its own power.

*See G.W. Van Keppel Co. v. Martin Marietta Materials, Inc.*, 2021 WL 2443901, at *2 (D.
Kan. June 15, 2021) (Lungstrum, J.).  The Court reaffirms this interpretation of the "use or
operation" limitation in the ERAs' indemnity provision.

Van Keppel argues that Mr. Newham had to use or operate the machine to drive it
onto the trailer with a remote control and that the machine's motor was still running at the

time of the accident.  Van Keppel notes in that regard that the indemnity provision is not limited to the use or operation of the equipment *by MMM*, and that Mr. Newham's operation would therefore qualify under the provision.  The Court rejects this argument, however.  Even if it could be said that Mr. Newham "used" or "operated" the machine in some sense in order to move it onto the trailer by remote control, that movement had been completed by the time of the accident, and thus Mr. Newham's injury was not one arising out of or in connection with the use or operation of the machine.  Applying the ordinary meaning of these terms, the Court interprets the provision not to include the injury suffered in this case.[2]

Van Keppel also argues that the defect here arose during MMM's use of the machine at the site, when the handrail became dislodged from its sheaths and rocks landed on the equipment (which Mr. Newham was climbing to remove at the time of the accident). Again, however, the Court declines to interpret the indemnity provision to include such an injury, which was suffered well after such use.  Rather, under the ordinary meaning of the terms, the injury must relate to use or operation of the machine in a more direct way. Moreover, even if the Court accepted Van Keppel's interpretation, Van Keppel has not proved by a preponderance of the evidence that the handrail became dislodged during

---

[2] The Court concludes that the provision is not ambiguous in this regard.  Even if it were, however, the parties presented no extrinsic evidence concerning the intended meaning of these terms, and any ambiguity would be resolved against Van Keppel both as the apparent drafter of the rental agreement, *see First Nat'l Bank of Olathe v. Clark*, 226 Kan. 619, 623 (1979); and as a party trying to obtain indemnification for its own alleged negligence, which agreements are disfavored and require clear and unequivocal language, *see Neustrom*, 156 F.3d at 1062.

MMM's use of the machine. The Court finds, based on the evidence presented, that it is as likely or more likely that the handrail became dislodged at some point after MMM's last use (and inspection) of the machine, such as when the machine was loaded onto the transport (there was credible testimony that the loading up a ramp would have been a bumpy ride) or when Mr. Newham grabbed the rail. There were no witnesses to Mr. Newham's fall, and it does not appear that any person checked or noticed whether the handrail was secured in place immediately prior to or after the loading. Thus, one can only speculate when the handrail became dislodged.

Second, even if Mr. Newham's injury could be deemed to have arisen from "use or operation" of the equipment, it did not arise prior to the return of the equipment to Van Keppel, as required under the provision. Mr. Newham had already loaded the equipment onto the trailer for transport, and thus Van Keppel's hired contractor, Lyon and Lyon (Mr. Newham's employer), had already taken possession and control of the equipment on behalf of Van Keppel. Van Keppel argues that it engaged Lyon and Lyon on behalf of MMM, who was responsible for the cost of returning the equipment. Regardless of which party ultimately paid the return cost, however, it is undisputed that Van Keppel is the party who contracted with Lyon & Lyon and who arranged for that company to remove the equipment from MMM's site. Therefore, under the ordinary meaning of the term, the equipment had been returned to Van Keppel at the time of the injury, and the injury does not fall within the scope of the indemnity provision.

Moreover, there is no basis to alter that ordinary meaning here. Van Keppel notes that according to the ERAs' "Return of Equipment" provision, MMM was required to

return the equipment to Van Keppel at MMM's expense, and it argues that the equipment was not returned under the ERAs until it reached Van Keppel's Kansas City shop. Van Keppel points to its specific Kansas City street address on the front of the ERAs. That address, however, is contained in a statement that *Van Keppel* is responsible for the return freight back to "VK shop" at the address in Kansas City, Kansas. Thus, it would appear that under that specific provision, which was added to the front of the ERAs in a space for "Additional Information" and which would therefore seem to trump the boilerplate provision on the other side, Van Keppel was responsible for the cost of the return of the equipment, not MMM. Regardless of who ultimately paid the return freight (the evidence indicates that Van Keppel absorbed that cost), the Kansas City location was used in the ERAs only with respect to the cost of return. The ERAs do not state that "return" means delivery to the Kansas City address or that the equipment is not deemed to have been returned until it reaches that address. Rather, the indemnity provision refers only to return *to Van Keppel*, not to a particular location, and thus the Court does not interpret the provision as urged by Van Keppel.

Van Keppel also argues that the equipment had not yet been returned because the ERAs required MMM to return the equipment "in as good order and operating condition as when initially delivered" to MMM, and that the dislodged handrail meant that the machine was not in such condition. The Court rejects this argument as well. Again, the ERAs do not state that "return" for the purpose of the indemnity provision is not accomplished unless the machine is in the proper condition. Rather, MMM merely promised to return it in that condition, and if it failed to do so, Van Keppel would be free

to claim a breach of that promise.  Such a breach would not mean that the equipment had not been returned to Van Keppel in the ordinary sense of the word.

Finally, Van Keppel argues that even if it cannot satisfy the "use or operation . . . until the return" limitation in the indemnity provision, it nevertheless may prevail under a separate, second prong of that provision, beginning with "and Customer will at its own expense defend . . . ."  Van Keppel argues that that second prong does not contain the limitation discussed above.

The Court rejects this interpretation.  In the first part of the indemnity provision, MMM has assumed responsibility for and has agreed to indemnify Van Keppel for any "loss, liability, damage and expense" that meets certain criteria (namely, that they are in connection with injuries arising from use or operation of the equipment prior to return).  In the second part, MMM has agreed to defend Van Keppel against claims and suits relating to any alleged "loss, liability, damage, or expense."  Thus, by the two parts, the provision covers the separate obligations of indemnifying Van Keppel for liabilities and defending Van Keppel against legal claims.  Accordingly, the provision is most reasonably and logically interpreted to give the two parts equal scope, meaning that the "use or operation . . . until the return" limitation would also apply to the duty to defend imposed on MMM in the second part.  The alternative interpretation urged by Van Keppel makes little sense, as MMM would have to assume Van Keppel's liabilities only for certain injuries, but it would have to defend *any claim* against Van Keppel, without limitation, whether or not it arose from the use or lease of the equipment and whether or not it arose while MMM had

control of that equipment.[3]   There is no basis to believe that the parties intended such a disparity in the scope of the two duties.  Accordingly, the Court interprets the indemnity provision as requiring Van Keppel to satisfy the "use or operation . . . until the return" limitation discussed above. [4]

For these reasons, the Court finds that the subject injury does not fall within the scope of the ERAs' indemnity provision, and thus Van Keppel has failed to prove a breach of that provision by MMM.  MMM is therefore entitled to judgment on Van Keppel's claim.

B.    *Nullification by the Purchase Order*

As a separate basis for judgment in its favor, MMM also prevails on Van Keppel's claim under the ERAs' indemnity provision because that provision was effectively nullified

---

[3] The second part of the provision ends with the following phrase, set off by a comma:  "including claims or suits wherein G.W. Van Keppel is claimed to have been negligent or breached warranties in connection with this Agreement."  Under the ordinary reading, applying the normal rules of grammar, this phrase, set off by a comma, is illustrative and not restrictive, and equates to a phrase beginning "including but not limited to."  *See, e.g.*, *State v. Phillips*, 2008 WL 5205457, at *3-4 (Ohio Ct. App. Dec. 12, 2008) (unpub. op.) (a parenthetical expression set off by commas contains non-essential information, and the meaning of the sentence would not be changed if the phrase were omitted) (citing Yelin & Samborn, *The Legal Research and Writing Handbook* 344 (2006)); *State v. Tunney*, 895 P.2d 13, 16 & n.4 (Wash. Ct. App. 1995) ("Under the rules of punctuation, appositives which serve a nonrestrictive (parenthetic) function are set off by commas; appositives which serve a restrictive (necessary) function are not.") (citing Strunk & White, *The Elements of Style* 1-4 (3d ed. 1979)), *aff'd*, 917 P.2d 95 (Wash. 1996).  Thus, this phrase in itself does not limit the scope of the duty to defend imposed here.

[4] Again, as discussed above, *see supra* note 2, even if the provision were deemed ambiguous in this regard, there is no extrinsic evidence to consider, and the Court would construe any ambiguity against Van Keppel.

or superseded by the indemnity provision in the Purchase Order.  That provision states as follows:

> Seller [Van Keppel] shall defend, indemnify and hold harmless Purchaser [MMM] against all damages, claims or liabilities and expenses (including attorney's fees) arising out of or resulting in any way from any defect in the goods or services purchased hereunder, or from any act or omission of Seller, its agents, employees or subcontractors.

The Court agrees with MMM that Van Keppel accepted the offer represented by the Purchase Order and its terms, that a contract was thus formed, and that the Purchase Order's indemnity provision conflicts with and therefore supersedes the ERAs' indemnity provision.

In so concluding, the Court first rejects Van Keppel's argument that the ERAs' "entire agreement" clause prohibits such a nullification by subsequent agreement.  That clause states that the ERA "contains the entire agreement between the parties and no other agreements, guaranties, or warranties, oral or written, shall bind the parties."  That provision on its face, however, merely states that no other past or contemporaneous representations are included in the agreement reached at that time.  *See Brookins v. Superior Mgmt. Group, Inc.*, 2013 WL 5819706, at *3 (D. Kan. Oct. 29, 2013) (an entire agreement provision means that "the contract's terms may not be contradicted by evidence of any prior agreement or a contemporaneous oral agreement").  It does not prohibit future modifications or other agreements between the parties, and Van Keppel has not cited any authority suggesting that an "entire agreement" or merger clause has such effect.

The Court also rejects Van Keppel's argument based on the ERAs' non-waiver provision, which states that "[n]one of the terms, covenants or conditions of this Agreement

shall be waived by any act of G.W. Van Keppel, its agents or employees, except by an instrument in writing, signed by an authorized officer of G.W. Van Keppel." The non-waiver provision does not apply here, as MMM has not argued that Van Keppel waived its rights under the ERAs' indemnity provision by some act. Rather, MMM claims that Van Keppel agreed to the terms of the Purchase Order, which terms then superseded other terms in the ERAs. The ERAs' non-waiver provision does not prohibit or require a signed writing by an officer for an agreement to modify the terms of MMM's equipment rental from Van Keppel.

The issue then becomes whether Van Keppel accepted the contract offer represented by the Purchase Order. If so, the Purchase Order's indemnity provision supersedes the ERAs' indemnity provision because the provisions are in conflict concerning which party indemnifies the other. *See Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 777 (10th Cir. 2010) (under Kansas law, a contract may be modified or set aside by a subsequent contract, and if two successive contracts are in conflict, the later supersedes the earlier one) (citing cases). Moreover, the Purchase Order contains an "entire agreement" clause stating that the Purchase Order and any documents referred to on its face constitute the entire agreement between the parties. The Purchase Order does not refer to the ERAs on its face; thus, the Purchase Order effectively nullifies any terms contained in the ERAs that do not also appear in the Purchase Order, including the ERAs' indemnity provision in favor of Van Keppel. Van Keppel has not disputed that, if it is deemed to have accepted the Purchase Order and its terms, it cannot enforce the ERAs' indemnity provision.

The Court finds that Van Keppel did in fact accept the offer consisting of the Purchase Order and its terms and conditions.[5]  "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer."  *See* Restatement (Second) of Contracts § 50(1); *see also Kansas Power & Light Co. v. Burlington N. R.R. Co.*, 544 F. Supp. 1336, 1348 (D. Kan. 1982) (citing Restatement § 50), *rev'd on other grounds*, 740 F.2d 780 (10th Cir. 1984); *State v. Boley*, 279 Kan. 989, 994 (2005) (citing with approval a provision of the Restatement (Second) of Contracts).  The test for acceptance is objective, not subjective, meaning the relevant inquiry is the manifestation of the party's intent to form a contract and not the party's actual intent.  *See Southwest & Assocs., Inc. v. Steven Enters., LLC*, 32 Kan. App. 2d 778, 781 (2004).  Thus, in this case, Van Keppel's argument that it did not intend to accept the Purchase Order's terms is not strictly relevant; rather, the Court examines objectively whether Van Keppel manifested its assent to the Purchase Order and its terms in the manner invited by MMM.

The Court first finds that Van Keppel did receive the Purchase Order with its terms and conditions.  In the pretrial order, Van Keppel stipulated that it had issued an invoice to MMM for the equipment that referred to the "Purchase Order Number" on the Purchase Order, which indicated receipt of the Purchase Order by Van Keppel.  Van Keppel does not dispute that the entire Purchase Order consists of the front and reverse sides of a single

---

[5] As it did at summary judgment, the Court concludes that Van Keppel cannot have accepted the Purchase Order's terms by its delivery of the equipment pursuant to one provision of the Purchase Order, as MMM again argues, because the equipment had already been delivered and MMM was already using the equipment at the time the Purchase Order was sent to Van Keppel.

page, with the front side noting that all terms and conditions should be read, and with the reverse side containing the "Purchase Order Terms and Conditions," one of which limits acceptance to the express terms contained on the face and back thereof.

The evidence at trial also supports this finding. In a string of emails, Van Keppel's Rob Franklin requested a "new P.O. #" for the rock crusher and other equipment in January 2015; MMM responded with an email that indicated that purchase orders were attached; Mr. Franklin then replied, "Got them, thank you;" and then in March 2015, Mr. Franklin requested a new "PO#" for the crusher's use at the Kansas site so that Van Keppel could send an invoice. That evidence indicates that Van Keppel did receive purchase orders (and not merely purchase order numbers, which MMM could have included in the body of an email without a separate attachment) from MMM relating to this piece of equipment. Mr. Franklin, who oversaw this rental for Van Keppel, testified that although he did not recall seeing the purchase orders for this equipment, it was common for MMM to issue purchase orders for rentals from Van Keppel; that his emails cited above indicate that he did receive purchase orders for this equipment and not merely purchase order numbers; and that it was typical for such purchase orders to contain terms and conditions such as those on the reverse side of the Purchase Order. Samuel Hayes, a longtime Van Keppel employee involved in leasing rock crushers, also testified that although he had not seen a purchase order from MMM for this equipment, it was common for MMM to issue purchase orders to Van Keppel; he had seen such purchase orders; and the purchase orders had standard terms and conditions associated with them.

The Court further finds that Van Keppel manifested its assent to the Purchase Order and its terms. Van Keppel's employees testified that purchase orders were issued by MMM to Van Keppel to allow Van Keppel to invoice MMM for equipment rentals. It is undisputed that Van Keppel issued an invoice to MMM for this equipment in April 2015 that referenced the Purchase Order Number from the top of the Purchase Order sent by MMM that contained the indemnity provision on which MMM relies. Thus, because Van Keppel invoiced MMM based on the Purchase Order, it reasonably appears, on an objective basis, that Van Keppel accepted the Purchase Order in the manner invited (as the purchase order was issued specifically to facilitate the invoice). Moreover, and perhaps more significantly, Van Keppel later sent an invoice to MMM for return freight for the rock crusher in the amount of $2,525. That amount is not found in any term of the ERAs, but as Kevin Kientz, Van Keppel's COO, testified on direct examination by Van Keppel's counsel, the amount is consistent with the terms of the Purchase Order, which includes a line item for this equipment rental for return freight in the amount of $2,525. Van Keppel's use of that return freight amount, which is found in the Purchase Order but which is absent from the ERAs, further manifests Van Keppel's acceptance of the Purchase Order and its terms, and belies the contention by Van Keppel that it relied only on the Purchase Order's number.

Thus, the Court finds that Van Keppel accepted the offer of the Purchase Order and its terms, and it therefore concludes under Kansas law that Van Keppel may not enforce the ERAs' indemnity provision because that provision was superseded and nullified by the

Purchase Order and its own indemnity provision. Judgment is therefore warranted in favor of MMM on Van Keppel's claim on this alternative basis as well.

C. <u>*Nullification by the MAA*</u>

As an additional alternative defense, MMM claims that Van Keppel's enforcement of the ERAs' indemnity provision is also prohibited by the parties' execution of the MAA, which contains its own indemnity provision. The Court rejects this defense as a matter of law, as it concludes that the MAA does not supersede or nullify any earlier agreement between the parties. The MAA does not contain any language suggesting that it replaces or modifies any other agreement. Moreover, the MAA does not address the lease of any equipment, but has a different subject and purpose, namely the terms under which Van Keppel may be granted access to MMM's premises. Because of the discrete subjects of the agreements, the MAA's indemnity clause does not necessarily conflict with the ERAs' indemnity clause. Finally, the MAA does not contain an "entire agreement" clause or any other provision limiting the parties' agreements to the terms contained in the MAA. Thus, even under the cases cited by MMM, there is no basis to conclude that the execution of the MAA bars Van Keppel's enforcement of the ERAs' indemnity provision. *See Hill*, 603 F.3d at 777-78 (cited by MMM) (subsequent agreement did not nullify earlier agreement, and agreements evidenced an intent to continue to operate under the earlier agreement, where the agreements served different purposes, the later agreement did not state that it superseded the earlier one, and nullification was not implicit, as the later agreement did not address all of the matters contained in the earlier agreement); *Brookins*, 2013 WL 5819706, at *3 (cited by MMM) (noting that nothing in a later agreement between the parties showed

16

that it was intended to modify an earlier agreement, which addressed a different subject matter; a second contract dealing with a different subject matter does not replace an earlier contract, despite an integration clause in the later agreement). Accordingly, this alternative defense to Van Keppel's claim fails.

## IV.   MMM's Claim for Breach of the Purchase Order's Indemnity Provision

MMM has asserted a counterclaim against Van Keppel for breach of the Purchase Order's indemnity provision. As discussed above, the Court finds that Van Keppel did accept the Purchase Order and its terms; therefore, MMM is entitled to enforce the provisions contained therein. The Court agrees with Van Keppel, however, that MMM has not met its burden to prove that the expenses it has incurred in the *Newham* suit fall within the scope of the Purchase Order's indemnity provision and that Van Keppel therefore breached that provision by failing to pay MMM.

As noted above, the relevant indemnity provision states as follows:

> Seller [Van Keppel] shall defend, indemnify and hold harmless Purchaser [MMM] against all damages, claims or liabilities and expenses (including attorney's fees) arising out of or resulting in any way from any defect in the goods or services purchased hereunder, or from any act or omission of Seller, its agents, employees or subcontractors.

The parties agree that the provision basically contains two alternative triggering events, relating either to a defect in the equipment or to an act or omission of Van Keppel or its agent or subcontractor. MMM argues that it need only show that it incurred expenses arising out of a *claim* of a defect or an omission, and that it need not show an actual defect or omission in order to recover under this provision. MMM has not explained why that is

so, nor has it cited any authority on that point.  In fact, the plain language of the provision would seem to state that the expense incurred by MMM – or the claim or liability for which MMM seeks a defense – must arise out of or result from a defect or a Van Keppel act or omission, which means that MMM would have to show an actual defect or act or omission from which its liabilities resulted.[6]

Nevertheless, even adopting MMM's interpretation, under which MMM must only show a *claim* that satisfies the indemnity provision, the Court finds that MMM has not shown by a preponderance of the evidence that it has incurred expenses because of such a claim.  The Court first addresses the existence of a claim of a "defect in the goods or services purchased [under the Purchase Order]."  The Court interprets this language as meaning a defect existing at the time of the purchase (or, in this case, the rental), as a defect that arose or was created later would not qualify as a defect in the "good purchased" under the plain meaning of that language.  That interpretation is further supported by the unlikelihood (in the absence of more explicit language) that the parties would have

---

[6] As noted above, "[u]nder Kansas law, agreements in which one party agrees to indemnify another for the indemnitee's own negligence are disfavored and as such must be expressed in clear and unequivocal language."  *See Neustrom*, 156 F.3d at 1062.  The claim that MMM has been defending in *Newham* and for which MMM seeks indemnification is a claim that MMM acted negligently with respect to the rock crushing equipment; and the Purchase Order's indemnity clause does not clearly and unequivocally provide that MMM may pass along any such liability to Van Keppel because of a mere *claim* without the occurrence of an actual defect or an actual act or omission of Van Keppel.  (In that regard, the Purchase Order's indemnity provision differs from the ERAs' provision, which contains language indicating that it applies if Van Keppel is *alleged* to have been negligent.)  In addition, as discussed above with respect to the interpretation of the ERAs, *see supra* note 2, deeming the provision ambiguous in this regard would not aid MMM, as the parties did not offer any relevant extrinsic evidence, and any ambiguity would be construed against MMM as the drafter of the Purchase Order.

intended for Van Keppel to be responsible for a defect that arose only after it delivered a defect-free machine to MMM.

MMM did not defend any such claim in *Newham*, however.  The only evidence offered at trial concerning the claims made in that case was the plaintiffs' petition and Van Keppel's answer filed in that court.  The petition alleges a defect existing at the time of the accident, not at the time of delivery to MMM; and it specifically alleges that the equipment was defective at the time of the accident because the handrail was not properly seated in the tube-like sheaths as intended.  There is no evidence that the plaintiffs claimed in *Newham* that the machine was defective at the time of delivery to MMM because of a failure to weld or for some other reason.  Thus, MMM has not shown that it incurred expenses defending such a claim in *Newham*.[7]

The Court further finds that MMM has failed to prove that its expenses incurred in *Newham* arise out of or result from a claim of an act or omission of Van Keppel or Mr. Newham (as Van Keppel's agent or subcontractor).  The Newhams did assert Van Keppel's negligence in their petition, but MMM was not required to defend that claim, and it has not

---

[7] Nor has MMM proved an actual defect existing in the equipment at the time of its delivery to MMM.  Indeed, proof of a defect in a machine of this type would ordinarily require expert testimony.  No such testimony was offered at trial, nor was any evidence from the underlying *Newham* case, in which the plaintiffs alleged that the machine was defective, admitted in this case.  MMM appeared to suggest at trial that the machine could have been designed to use welding instead of the sheaths to keep the handrail securely in place; but it offered no evidence to support such a suggestion other than testimony that such welding might have been possible.  Such meager evidence falls well short of proof sufficient to show that the machine was defective in that regard, as such proof would have required evidence about the reason for the design, the standard in the industry, the feasibility of alternate designs, and the like (as one might see in a product liability case, or in a case such as *Newham*).

shown that it incurred any expenses arising out of that claim, as it has been defending claims of its own negligence.  MMM also notes that Van Keppel, in its answer in *Newham*, alleged Mr. Newham's contributory negligence (MMM has not shown that it also made such an allegation), but again MMM has failed to show that it has incurred expenses arising out of that claim by Van Keppel.  MMM argued summarily at trial that "covered claims" were asserted in *Newham*, but it has not shown that its defense costs arose because of any claims other than the claims of negligence by MMM – and as discussed above, the indemnity provision does not include language clearly and unequivocally making Van Keppel indemnify MMM for MMM's own negligence.[8]

Accordingly, the Court finds that MMM has not satisfied its burden to prove a breach by Van Keppel of the Purchase Order's indemnity provision.  The Court therefore awards judgment to Van Keppel on MMM's counterclaim.

---

[8] Nor has MMM proved that Mr. Newham's fall was actually caused by an act or omission of Van Keppel or Mr. Newham.  Again, the cause of the accident was not proved at trial by either party.  Mr. Newham testified that he fell because the handrail gave way when he grabbed it; he did not know, however, when the handrail became dislodged from its sheaths.  MMM presented evidence that the movement of the machine onto the transport was likely a bumpy ride that included an ascent up a ramp, but there is no evidence establishing that the handrail was secured prior to that movement or that it did not become dislodged during MMM's use of the machine or during the preparation of the machine for transport.  Nor is there enough evidence to show that Mr. Newman's own act or omission led to the accident – despite MMM's futile attempt at trial to get Mr. Newman to admit that he did not employ proper three-points-of-contact ladder technique – primarily because there were no other witnesses to the accident.  The accident was *possibly* caused by acts or omissions of several parties, but there simply is not enough evidence to prove that the accident was caused by an act or omission by Van Keppel or Mr. Newham.

V.     **Claims for Attorney Fees**

As set forth above, the Court has rejected each party's claim for attorney fees and other expenses incurred in the *Newham* case.  Each party also seeks fees incurred in the present action in this Court, although neither party has made a specific claim in that regard or briefed its entitlement to such fees.  Accordingly, if either party wishes to pursue a claim for attorney fees and expenses incurred in litigating the present action, it should file a motion seeking such relief in accord with the applicable rules.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant MMM is awarded judgment on plaintiff Van Keppel's claims asserted in this action.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff Van Keppel is awarded judgment on defendant MMM's counterclaims asserted in this action.

IT IS SO ORDERED.

Dated this 31st day of January, 2022, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge